IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,                    CASE NO.   3:12-mj-00014 - CMK

                Plaintiff,

vs.                                                                      <u>DECISION AND JUDGMENT</u>

KENNETH H. TELLSTROM,

                Defendant.

      This case came on regularly for trial on October  23,  2012,  at the United States District Court in Redding, California, the Honorable Craig M. Kellison, United States Magistrate Judge, presiding; the United States appeared by and through Rule 180 Special Prosecutor, Law Enforcement Officer Joseph Cook; and the defendant, Kenneth H. Tellstrom, appeared by and through his attorney, John Kinney.

      By way of complaint, the defendant [Tellstrom] is charged, in count one, of cutting or otherwise damaging any timber, tree, or other forest product except as authorized by permit, in violation of Title 36 C.F.R. § 261.6(a); in count two, building, maintaining or constructing a road or trail on national forest system lands without a special use permit, in violation of Title 36 C.F.R. § 261.10(a); and count three, damaging property of the United States, in Violation of Title 36 C.F.R. § 261.9(a).

1

Each of these offenses is punishable by a fine of not more than $ 5,000, imprisonment for not more than six months, or both.  The government also seeks restitution.  18 U.S.C. § 3563(b).

The matter stems from the alleged activities by the defendant on a roadway located partially within the Shasta Trinity National Forest that will be referred to herein as the Coal Creek Road [Road].[1]

The defendant is the owner of real property near Shasta Lake more commonly known as the Lakeview area [Lakeview subdivision] of Shasta County which is within the interior boundaries of the Shasta Trinity National Forest. The Coal Creek Road most likely served as an access road at one time from Highway 99 and Interstate 5 [I-5]  to the property owners in the Lakeview subdivision. The Coal Creek Road does not serve as the only access to defendant's property from I-5.  He also apparently has deeded access to the south of his property along a road [Skyline Drive] which intersects with the Lakeview Road and then westerly to I- 5. Gov. Ex. 3.

The government maintains that the defendant attempted to maintain and improve the Coal Creek Road without authorization causing resource damage to vegetation and trees.  The defendant claims some type of "pre-existing right" to use the Road which he asserts carries with it, the right

---

[1]        The Coal Creek Road travels onto National Forest lands in the north half of the southeast quadrant of Section 3, Township 34, North Range 4 West of the Mount  Diablo  Meridian (hereinafter, as Section 3) extending through to the northwest through a parcel of  National Forest lands in the western-half of  Section 4, Township 34 North, Range 4 West, of the Mount  Diablo Meridian (hereinafter referred to as Section 4), before continuing north into Section 33, Township 35 North, Range 4 West, Mount  Diablo Meridian (hereinafter referred to as Section 33).  Section 10, as used herein refers to a portion of the Lakeview subdivison located in Section 10, Township 34 North, Range 4 West of the Mount Diablo Meridian.
        There was also differing versions of the actual names of the roads in question.  For example, the Coal Creek Road may also be referred to as the Skyview Road, Skyview Lane and Skyline Drive.  The court recognizes that at some point in either Section 10, 3 or 4, Skyline Drive becomes known as the Coal Creek Road.  To avoid confusion, the road herein described as the Coal Creek Road is the road in question herein, and runs north of defendant's property into Sections 3, 4 and 33 to the I-5 exit at Gilman Road.  A portion of this Road was marked in 'red' on Gov. Ex. 1.  Skyline Drive shall be referred to as the road leading south from the Lakeview subdivision to Lakeview Road across Section 10.
        Complicating the identification and location of the Road was evidence of a complex patchwork of spurs and access roads in Sections 10 and 3 to private property owners.  None of the maps clearly identify the Road as it passes through north half of Section 10 or the south half of Section 3.

2

to improve and maintain the Road without Forest Service authorization.

Facts.

The defendant met with Shasta-Trinity National Forest District Ranger Kristi Cottini [Cottini] in 2008 to discuss the defendant's request to utilize the Coal Creek Road as a secondary access to his property in the Lakeview subdivision.  A portion of the Coal Creek Road traverses Forest Service lands referred to herein as Sections 3, 4 and 33.  Section 4 has always been part of the public domain and never subject to private ownership.

Cottini informed defendant that it would be necessary that he provide documentation supporting his claim of easement or entitlement to use the Road. Gov. Ex. 2.  Defendant's attorney apparently then submitted a number of documents to Cottini in support of defendant's right to utilize the Road. Cottini informed defendant's attorney that the documentation did not support the claim of easement or entitlement to use the Road and that the matter would be deemed closed.  Gov. Ex. 3.  There is no evidence that the defendant proceeded further administratively.

During the late winter of 2011 Shasta Trinity National Forest Law Enforcement Officer Torry Smith [Smith] was requested to investigate a potential trespass in the O'Brien and Gilman Road area of the Shasta Trinity National Forest.   Upon exiting at the Gilman Road exit on I-5, he discovered a bulldozer on a trailer and what appeared to be a freshly graded road.  He noticed that trees and shrubbery had been bulldozed over.   He estimated that approximately two miles of the Coal Creek Road in Sections 33 and 4 had been bladed and disturbed.  The most notable area of disturbance was in an area described as the "saddle," which is located in the far northeasterly portion of Section 4 which lies completely within the Shasta Trinity National Forest.  Gov. Ex. 1.  Smith observed considerable damage and took numerous photographs. Gov. Ex's 4(a) through 4(g); and 5(a) though

3

5(d).

Smith then contacted the defendant who admitted hiring individuals to perform road work to make the Road "public safety passable," stressing that it serve as an emergency exit.  The defendant told Smith that he had hired Randy Troy Easley of Easley Excavation [Easley] and Kevin Archibald [Archibald] as his contractors.  Archibald and Easley proceeded with the road grading while the defendant documented the construction progress by video. Archibald and Easley were contracted to 'brush' the road and cut down trees and shrubbery, as necessary.

The defendant informed Smith that he had "deeded access and rights of way" to the Road. The defendant also indicated that other property owners in the Lakeview subdivision had performed similar grading work without Forest Service permission on other roads within the Lakeview area. Since the court did not receive any evidence where this work was performed, it is unsure of its relevance.

The defendant claims some type of "pre-existing right" to utilize the Road as an affirmative defense. United States v. Lowry, 512 F.3d. 1194, 1199 (9th Cir. 2008).  Neither during trial, nor in his post-trial brief, however, does the defendant attempt to identify the type of easement or right of access he enjoys with respect to the Coal Creek Road.

The court did not receive any evidence during trial concerning the exact location of defendant's property.  Only when questioned by the court did defendant's counsel indicate that the defendant's property was located in the proximate area of the NW 1/4 of Section 10 near 'Yeoty.' Since the defendant did not testify and no documentation relating to the location of his property in the Lakeview subdivision was received, the court finds it problematic to speculate what the defendant claims as the dominant tenement.  The court does not know if the defendant owns more

4

than one parcel.[2]

Defendant's witness, forensic surveyor, Frank Lehmann [Lehmann] testified generally concerning the history of the Coal Creek Road and the chain of title in Sections 3 and 10.  Lehmann testified that the Coal Creek Road was in existence as early as 1963 and served as a road to the Rutherford property.  Def. Ex. C.  Skyline Drive was apparently constructed in approximately 1994. Def. Ex. D.

The theme of Lehmann's testimony was that the ownership of Section 3 and portions of Section 10 was once held by a common owner (Rutherford) as early as 1944.  Def. Ex. D.  The court did not receive any evidence to support the fact that the Coal Creek Road was in existence at this early date, but certainly the maps introduced at trial support its existence by 1959.  Gov. Ex. 1; Def. Ex's C and D.  Lehmann testified that since the time of  Rutherford's common ownership of the properties located in Sections 10 and 3,  the property has been subdivided and transferred to numerous owners during the last 70 years.  The defendant also introduced Def. Ex's. A, B and E to support the claim that the right to use Coal Creek Road was contemplated or implied in the property transfers.

Def. Ex. A is a 1968 deed from Tipton to the Forest Service of the NW1/4 of the SE1/4 of Section 3.  There is no evidence that there is any commonality of interest exists in the property being

---

[2]        Although it is not relevant to the government's case what property the defendant owns, it is very important to defendant's affirmative defense.  The court does not know if the defendant had any type of deeded  access to any road.  Having such deeded access would make difficult a claim for an alternate access.  See 36 C.F.R. 114 (f)(1).  In Gov. Ex. 3, Cottini makes reference to a grant deed submitted by the defendant that included "a  non-exclusive easement to the south along an existing road, from the S1/2 of the SW1/4 of Section 3 through Section 10.  If the defendant's property is located in Section 10 (as represented by counsel), the court is confused why the defendant has a deeded easement running south into Sections 3 and 10.  It also reinforces the conclusion that although the defendant enjoyed deeded access to his property along another road, his actions herein were simply an effort to have access to another road either as a substitute, or as a secondary source.

transferred to the Forest Service and the property now owned by the defendant.[3]  It does not appear that Coal Creek Road runs through this property.

Def. Ex. B is a 1967 deed from Rutherford to Tipton of the W1/2 of the SE1/4 of Section 3. Again, the property in question does not appear to be related to that of the defendant.  The deed also provides the Tiptons with a "right of way" along an existing road to I-5.  Since Skyline Drive was not in existence in 1967, the evidence suggests that the "right of way" must refer to the Coal Creek Road.  The defendant also introduced Def. Ex. E, which is a 1957 reciprocal easement agreement between the son and daughter-in-law of Rutherford and Campbell which pertains to the SW1/4 of Section 10.  This appears to be south of the defendant's property and allows for the mutual construction of roads and use within the Section 10.  The agreement extends to Rutherford "the right to use [roads to be constructed] any road and extension thereof across adjacent lands" from their property to Highway 99.[4]

The defendant submitted a post-trial reply brief [ReplyBrief] on December 14, 2012. Attached to this brief are copies of three recorded documents that were not introduced into evidence at trial, although two of which are referenced on Def. Ex. D.  Attempting to submit documents into evidence following the close of trial is to be discouraged.  Nonetheless, these recordings suffer the same infirmity as Def.'Ex's. A, B and E.  They do support the historical existence of the Coal Creek

_____

[3]     As discussed above, the evidence reflects that the defendant's property is located somewhere in the NW1/4 of Section 10.  Any of the potential rights of access allegedly reserved or created by the language in Def. Ex. A would not have involved the Coal Creek Road since it does not traverse either the property being transferred to the Forest Service or that being retained by the grantor.  The defendant does not provide this court with any suggested relevance of this exhibit.  To the extent the defendant places importance in the term "appurtenances" as used in said deed, this issue shall be discussed below.

[4]     Since the Coal Creek Road was the only road in existence to Highway 99 from the Rutherford property in 1957, the defendant suggests that the deed was making reference to that road only.  But the agreement also allowed Rutherford to construct a road south unto the Campbell property which would suggest that another access to Highway 99 may have been contemplated.

Road, but fall far short of establishing the existence of any type of easement in favor of defendant over Section 4.  The court is also unsure of what type of easement, if any, he claims over the private holdings in Section 3 that are burdened by the Road or its spurs.

 In the November 10, 1964 deed from Rutherford to Rutherford Jr.,  Rutherford simply reserves an easement in the S1/2 of the SW 1/4 of Section 3.  This property is apparently north of defendant's property.  The dominant tenements are not the same and Section 4 is not discussed.

The Partial Termination Agreement of May 24, 1965, refers to the termination of a road and maintenance agreement of a portion of the Coal Creek Road.  This document was not introduced at trial; not discussed by Lehmann and does not appear on Def. Ex. D.  The court cannot determine where the portion of the Road is located or how it is relevant to defendant's property or case.

The March 1, 1967 deed from Rutherford to Tipton relates to property in the W1/2 of the SE1/4 of Section 3 and includes a grant and reservation of an easement to the Coal Creek Road to and from I-5.  Although exhibit reinforces the historical existence of the Coal Creek Road, it does not add clarity to the central issue, namely whether Rutherford and his successors in title ever possessed the ability to grant or reserve the use of the Coal Creek Road over Forest Service lands.  The land transferred in this deed also appears to be unrelated to the property now owned by the defendant.

The Special Use Administrator for the Shasta Trinity National Forest, Virginia Beres [Beres] testified that Section 4 has always been held in the public domain.  She also testified that the Coal Creek Road was not a recognized Forest System Road and not included within the 'Forest Transportation Atlas' [Atlas]. 36 C.F.R. § 212.1.  She further stated that her records did not reflect

the existence of any recorded easements in Section 4 at or near the Coal Creek Road which would have necessarily included the road defendant describes as Skyline Drive.

Discussion.

The Organic Act of 1897 establishes the Forest System. 16 U.S.C. §§ 473-482, 551. The Forest Service may properly regulate the surface use of forest lands. United States v. Doremus, 888 F.2d 630 (9th Cir. 1989); 16 U.S.C. § 551.  Section 551 also grants authority to the Secretary to make "rules and regulations and (to) establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction . . ."   The section specifically states that the Secretary shall make provision for the protection of the national forests against destruction by fire and depredation. Thus, the Secretary has been given the authority to promulgate reasonable rules and regulations which will protect the national forests and which will help to carry out the purposes for which the national forests were created.  The regulations in question, 36 C.F.R., Part 252, were designed to minimize adverse environmental impacts on the surface resources of the national forests.

The recognition of any claim of easement across Forest Service property is subject to specific laws and regulations.  The Forest Service manages Forest System lands pursuant to various statutes, including the Alaska National Interest Lands Conservation Act [ANILCA], the Federal Land Policy and Management Act [FLPMA], the National Forest Roads and Trails Act [NFRTA], and the Special Use Permit regulations contained in 36 C.F.R. section 251.  FLPMA authorizes the Secretary of Agriculture to "grant, issue or renew rights of way over [National Forest] lands." 43 U.S.C. § 1701 (1976).

In 1980, Congress enacted ANILCA.  Section 1323(a) of ANILCA mandates that the

8

Secretary of Agriculture "provide such access to non-federally owned land within the boundaries of the national forest system as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment" of the private land. 16 U.S.C. § 3210(a).  However, § 1323(a) explicitly conditions access on the applicant's compliance with the "rules and regulations applicable to ingress and egress to or from the national forest system." Id. The "rules and regulations" referred to by § 1323(a) are those contained in 36 C.F.R. section 251 subpart B.

In count one, the defendant is charged with "cutting or otherwise damaging any, timber, tree, or other forest product except as authorized by permit. . . ."  Damaging is defined as "to injure, mutilate, deface, destroy, cut, chop, girdle, dig, excavate, kill or in any way harm or disturb." 36 C.F.R. § 261.2.  The testimony of Smith coupled with the evidence of destruction portrayed in Gov. Ex's. 4(a), 4(c), 4(e), 4(f), 4(g), 5(b), 5(d) and 5(e) adequately support this court's finding that the defendant did cut or otherwise damage trees and shrubbery in the course of improving the Coal Creek Road.  It is clear from the evidence that the defendant was responsible for the road work and grading in Sections 33 and 4.  Likewise, the evidence supports a finding that defendant was responsible for the resource damage to the trees and vegetation adjoining the Road as a result of the grading activity.  The fact that the work was performed by others is of no avail.  Defendant was responsible for the hiring of Easley and Archibald.  See, 18 U.S.C. § 2(b) ("[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.)  Section 261.6(a) imposes strict liability on anyone, "cutting or otherwise damaging any timber, tree, or other forest product." In United States v. Wilson, 438 F.2d 525 (9th Cir.1971), the court held that violations of § 261.6(a), an offense made punishable as a misdemeanor by 16 U.S.C. § 551, does not require a criminal intent.

In count two, the defendant is charged with building, maintaining or constructing a road or trail on national forest system lands without a special use permit in violation of 36 C.F.R. § 261.10(a).  The testimony of Cottini, Smith and Gary Gamble; and Gov. Ex's 4(a) through 4(g) and 5(a) through 5(e) all confirm defendant's road construction within the Shasta Trinity National Forest in Section 4.  The testimony of Cottini and Beres support the finding that defendant did not possess a Special Use Permit for his activity. [5]

Finally, in count three,  the defendant is charged with  damaging property of the United States, in Violation of Title 36 C.F.R. § 261.9(a).   The court in <u>United States v. Doremus</u>, supra at 635,  held the property damage under this section included damage to live trees and vegetation ("certainly damage is inflicted when a live tree is destroyed by being pushed over.").  Smith testified to seeing cut and pushed over green trees and vegetation.  Gov. Ex's. 4(e) through 4(g), 5(d) and 5(e) reflect such damage.

The evidence supports the conclusion that the focal point of these violations  occurred within the Shasta Trinity National Forest in Section 4 in an area referred as the "saddle."  This area was clearly marked on Gov. Ex.1 by Smith.  Although Lehmann speculated that the saddle might be located in Section 3, the location of the  Road on all of the maps submitted into evidence belie this assertion.[6]

By its very description, the saddle is located at the point where the Road crosses the ridge.

---

[5]        As used herein, reference to the need for special use authorization and a special use permit are used interchangeably [Special Use Permit.]   36 C.F.R. § 251.50.

[6]        Lehmann suggests that the location of the Coal Creek Road on the maps  might be inaccurate, thus possibly placing the saddle and area of disturbance as described by Smith  within the far northwestern portion of Section 3.  This observation is indeed speculative and  appears to be a Hail Mary.  Since defendant's best shot at establishing some type of  right of way is predicated on establishing a defined historical use and recognition of the Coal Creek Road, the notion of dismissing the accuracy of the very maps that arguably validate the Road's existence and location appears counter productive.

10

Smith clearly marked this location on Gov. Ex. 1 which corresponds to the area of highest elevation of the Road as it crosses the ridge.  It would also appear from Gov. Ex. 1, that the Coal Creek Road enters Section 3 approximately a half mile south of the area described by Smith as the saddle.  It is doubtful that Lehmann's confusion concerning the location of the saddle is directed at the point where the Road crosses Section 4 into Section 3.  The map does not reflect any indication of a ridge or saddle at this location.  Even if the court were to find that the "saddle" as described by Smith was actually located in  Section 3, it would still be located within the Shasta Trinity National Forest and for the reasons stated herein, a Special Use Permit would still have been required for the work performed by the defendant.  The remaining portion of the trial essentially centered on defendant's affirmative defenses that his cutting or damaging trees or forest products was otherwise permissible [§ 261.6(a)] and that "special use authorization" was not required to construct or build a road [§ 261.10(a)].  United States v. Lowry, supra at 1199; United States v. Freter, 31 F.3d 783, 788 (9th Cir. 1994); United States v. Gravenmeir, 121 F.3d 526, 528 (9th Cir. 1997).   The defendant has the burden of going forward with these affirmative defenses, since they were not elements of the case in chief.  This interpretation is consistent with the Supreme Court settled rule that "an indictment . . . founded on general provisions defining the elements of an offense . . . need not negate the matter of an exception made by a proviso or other distinct clause. . ." McKelvey v. United States, 260 U.S. 353, 357 (1922).  This reading of the statute is also consistent with this circuit's "well established rule . . . that a defendant who relies upon an exception to a statute . . . has the burden of establishing showing that he or she comes within the exception." United States v. Freter, supra, at 788 (internal quotation omitted).

As a general observation, the court notes that even if it were to conclude that the defendant possesses some type of easement or legal right of way to the Coal Creek Road in Section 4, it  does not necessarily resolve the resource damage and Special Use Permit charges, herein. With few exceptions (not applicable, herein), any type of road construction or road maintenance on Forest

11

Service lands requires a Special Use Permit. 36 C.F.R. § 251.50(d)[7]; § 251.110(d). Adams v. United States (Adams II), 255 F.3d 787, 793-794 (9th Cir.2001).

In Adams II, the court held that the Adams, whose property was patented in 1892 and had been completely surrounded by the Humboldt-Toiyabe National Forest in Nevada since 1906, needed to apply for a Special Use Permit for use of a Forest Service road that served as their only access. As the basis for its holding, the court cited FLPMA, 16 U.S.C. § 3210(a) of ANILCA, and the Special Use authorization regulations at 36 C.F.R. §§ 251.110, 212.8(b), 251.114(a)-(f), and 251.57. Permits are generally in the form of Special Use Permits issued under Part 251. Section 251.50(a) provides that "[a]ll use of National Forest System land, . . . except those provided for in the regulations governing . . . minerals and mineral materials (Part 252), . . are 'special uses' and must be authorized. The Secretary of Agriculture has promulgated regulations governing procedures by which landowners may apply for access across national forest system lands. See Title 36 C.F.R., Part 251, Subpart D. Subpart D requires that a landowner apply for access in accordance with 36 C.F.R. § 251.54.

Here, the defendant has not carried this burden. There was no evidence of public record to support the existence of an express easement for the Coal Creek Road. Defendant also fails to satisfy this burden by simply establishing that the property owners in the Lakeview subdivision were once served by the Coal Creek Road. Merely documenting the historical use of a road on public lands is not sufficient. Roads of varying nature fill our national forests, but do not by their existence create easements to the benefit of adjoining private property owners. The evidence of the Road's non-use coupled with the subsequent construction of Skyline Drive suggests that the property owners in the Lakeview subdivision had obtained another means of access to their property to I-5 from the south.

---

[7]    § 251.50(d)(1) provides in pertinent part that travel on National Forest System roads does not require a special use permit unless the "road" is not authorized for general public use under § 251.110(d). § 251.110(d) requires a special use permit in the event that the use of said road would require surface disturbance. Here, the evidence reflects that the Coal Creek Road is not a "National Forest System road;" is not open for general public use; and was subject to surface disturbance by the acts of defendant.

The suggestion that the use of the term "appurtenance" in Def. Ex. A created such an easement to the Road generally for all owners in the Lakeview subdivision is also rejected.  Fitzgerald Living Trust v. United States, 460 F.3d 1259, 1267 (2006).  Nor, is the language in Def. Ex. B that purportedly grants and reserves the use of a road of any avail.  A grantor can only convey or reserve what he may own at the time of transfer.  Neither the defendant, nor his predecessors in interest ever owned property situated in Section 4.

Similarly, the usual suspects of common law easements can also be eliminated.  The defendant cannot claim a common law easement because all common law claims are preempted by ANILCA and FLPMA where, as here, the United States owns the servient estate for the benefit of the public.  See Adams v. United States, (Adams I), 3 F.3d 1254, 1259 (1985); United States v. Jenks, 804 F. Supp. 232, 236-37 (D. N.M. 1992).

There is no easement of "necessity" because the creation of the Skyline Drive would have eliminated said necessity.  McFarland v. Kempthorne, 545 F.3d.1106, 1111 (9th Cir. 2008).  There cannot be easement by "implication" because the defendant apparently received a deeded easement to Skyline Drive when he acquired his property.  Watt v. Western Nuclear, Inc., 462 U.S. 36, 59 (1983), Fitzgerald, supra at 1264; and Gov. Ex. 3.  There is no easement by "prescription" because there was no evidence that the Road was used for the prescriptive period by the defendant and the Forest Service is not subject to claims of adverse possession.  Burlison v. United States, 533 F.3d 419, 428 (6th Cir. 2008).  The doctrine of "implied public dedication" is not applicable because there is no evidence that the Forest Service ever intended the Coal Creek Road to be dedicated to the public.  Stamas v. County of Madera, 2009 WL 2513470 (E.D. Cal. 2009).  In fact, the evidence of the Road's non-use [Gov. Ex's 4(a), 4(d)and 4(g)] coupled with the testimony of Beres and Cottini that it was not included in the Atlas and was soon destined to be closed for travel by the public support just the opposite conclusion.

Some evidence was received suggesting that the court should view defendant's claim to an easement or right of way differently with respect to Section 3, as opposed to Section 4 which has

always been part of the public domain.  This argument is based on the premise that a large portion of Section 3 was transferred from private ownership to the Forest Service in the late 60's and thus, may be arguably burdened by express and implied easements that existed at the time of the transfer. Although there is some merit to this argument, the court need not address the rights, if any, defendant may have to the Road as it pertains to Section 3.  The evidence amply supports the conclusion that the majority of the road construction and disturbance to vegetation occurred in Section 4.

It is also important to note that this court was never in a position to adjudicate defendant's claim of easement, or right of way to the Road.  The defendant's affirmative defense must also comply with the Quiet Title Act. 28 U.S.C. § 2409a (2012). This is the exclusive remedy for a party to challenge the government's interest in real property.  See e.g. McClellan v. Kimball, 623 F.2d 83 (1980).  The terms of the act require a claimant to "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." 28 U.S.C. § 2409a(d). The Quiet Title Act also contains a 12-year statute of limitations (28 U.S.C. 2409a(g)), which provides that a quiet title act claim must be commenced within twelve years of the date upon which it accrued.  Evidence of non-use, the creation of Skyline Drive and the decision by the Forest Service to not recognize the Road in its Atlas suggests that defendant's rights, if any, to claim some type of access may have lapsed years ago.

In his Reply Brief the defendant now suggests that his road work on the Coal Creek Road required only "written authorization," as opposed to a Special Use Permit under § 251, Subpart B. 36 C.F.R. § 212.6(a).   No case law, however supports the recognition of such a distinction of the red tape requirements, or as defendant suggests an informal or less structured authorization to perform work on roads lying on Forest Service lands .  16 U.S.C. Section 3210 (ANILCA) provides that any access by owners to their private lands over Forest Service lands requires compliance with "rules and regulations applicable to access across public lands."

In Adams II, supra at 255 F.3d, 787, 793, the court held that the "rules and regulations"

14

referred to in § 3210 are those contained in 36 C.F.R. § 251, subpart B.  36 C.F.R. § 251.111.

Accord., United States v. Jenks, supra at 235; Fitzgerald Living Trust v. United States, supra at 1262.

Of course, this is all predicated on the recognition of the defendant's right to use any road on national forest system lands by the appropriate "authorized [Forest Service] officer."  See 36 C.F.R. § 251.114(a).   This is problematic for the defendant, since the right for defendant to obtain a Special Use Permit would be predicated on his establishing that he has no other recognized route of access.  36 C.F.R. Section 251.114(f)(1).  That is not this case.  It is clear that the defendant enjoys deeded access to the south of his property along Skyline Drive to Lakeview Road.  As he expressed to Cottini and Smith, he simply desired access to the Coal Creek Road for "safety or secondary access" purposes.

The defendant also does not establish that the Coal Creek Road is an existing national forest system road that is required to reach his home under 36 C.F.R. § 212.6(a).  36 C.F.R. § 212.55.  Cottini and Beres testified that the Coal Creek Road was not an existing national forest system road and was not included in the Atlas.  36 C.F.R. § 212.1.  A road that is not included within the Atlas is defined as an "unauthorized road."  36 C.F.R. § 212.1.    In Section 212.6(b), the defendant's entitlement to utilize the Coal Creek Road requires that the road be an "existing national forest [road]" subject to "rules and regulations" [Special Use Permit].  36 C.F.R. Section 251, subpart B. Adams II, supra.  He has done neither.

<u>Restitution.</u>

The government seeks restitution in this matter.  A hearing regarding the imposition of restitution was held on April 10, 2013.  The government was unable to provide information regarding actual damages in this matter due to a fire that occurred in the area after the maintenance and improvements were completed.

15

Conclusion.

The defendant is charged, in count one, of cutting or otherwise damaging any, timber, tree, or other forest product except as authorized by permit, in violation of Title 36 C.F.R., Section 261.6(a).   For the reasons set forth above, the court finds the defendant guilty.

In count two, the defendant is charged with building, maintaining or constructing a road or trail on National Forest System lands without a special use permit, in violation of Title 36 C.F.R., Section 261.10(a).  For the reasons set forth above, the court finds the defendant guilty.

In count three, the defendant is charged with damaging property of the United States, in Violation of Title 36 C.F.R., Section 261.9(a).  For the reasons set forth above, the court finds the defendant guilty.

Accordingly, this Court imposes the following judgment.

(1) The Defendant is placed on informal probation for a period of three years.

(2) During the term of probation, Defendant shall comply with the standard conditions of probation as follows:

    (a)    shall not commit another federal, state or local crime; and

    (b)    shall notify the court within seventy-two hours of any change in residence or employment.

(3) As a special term and condition of probation, the defendant shall not enter or use, or attempt to use that portion of the Coal Creek Road located in Section 4, Township 34, North, Range 4 West, Mount Diablo Meridian [Section 4], for any type of vehicular or motorized travel.

(4)   The defendant as to Count I, is fined the sum of $ 4,000.00, plus a  $ 10.00 special assessment pursuant to 18 U.S.C. § 3013; as to Count II, is fined the sum of $ 4,000.00, plus a $ 10.00 special assessment  pursuant to 18 U.S.C. § 3013; and as to Count III, a fine is not imposed as the court finds that the finding of damage to timber and damage to property of the United States in §§  261.6(a) and § 261.10(a)

16

is somewhat duplicative.  The total fine is $ 8,020.00.

(5) The defendant shall pay said fine to the Clerk, U.S. District Court, 501 I Street, Sacramento, California 95814, on or before September 1, 2013.

Pursuant to Rule 58(g)(2)(13) and Rule 32(j) of the Federal Rules of Criminal Procedure, you have the right to appeal the judgment of conviction and/or sentence to the United States District Court within ten (10) days of the entry of the Judgment.  You must then file your Notice of Appeal with the Clerk of the United States District Court, Eastern District of California, 501 "I" Street, Sacramento, California  95814.  You are further advised that if you are unable to pay the costs of appeal, you may seek  permission to appeal in forma pauperis.


DATED:  April 11, 2013


_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

17